UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER BIRD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 17-12159-FDS |
| ) | |
| CITY OF NEW BEDFORD, ) | |
| JOSEPH CORDEIRO, JAMES RYAN, ) | |
| GREG DEMERS, TERENCE O'SHEA, ) | |
| and DAVID MICHALSKI, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is a civil rights action. Plaintiff Christopher Bird was taken into protective custody by the New Bedford police based on his apparent intoxication. While at the police station, he was allegedly assaulted and tased by several police officers. He has brought suit against the City of New Bedford and individual officers under 42 U.S.C. § 1983, alleging constitutional claims based on excessive force, false arrest, and malicious prosecution, and under various common-law theories.

Defendants have moved for summary judgment, based principally on the ground that they are entitled to qualified immunity. For the following reasons, the motion will be granted in part and denied in part.

I.      **Background**

Unless otherwise noted, the following facts are undisputed.

A.      **Factual Background**

On November 6, 2014, Officers James Ryan and David Michalski of the New Bedford Police Department responded to a call regarding an intoxicated male at the Wonder Bowl, a bowling alley in New Bedford. (Michalski Dep. at 110-11). They arrived on scene, identified Christopher Bird, and escorted him outside. (*Id.* at 111-19; Ryan Dep. at 104). Once outside, they assessed Bird, who appeared to be intoxicated, and placed him in protective custody. (Michalski Dep. at 119-20; Ryan Dep. at 110).[1] He was then handcuffed and transported to the New Bedford Police Station for booking. (Ryan Dep. at 110, 114-15).[2]

At the police station, Bird was handcuffed to a bench while waiting to be photographed for booking. (Bird Dep. at 45; Compl. ¶ 26; Defs. Ex B; Defs. Ex. C). In the process of taking his photograph, the handcuffs were removed. (Compl. ¶ 28). An altercation between Bird and several officers followed. (Defs. Ex. C).

The parties disagree as to how the altercation unfolded. Part of it was captured on video, but the recording is clearly incomplete. Furthermore, the recording is actually a video of a video, which Officer Demers took on his personal cell phone; the original video was not preserved by the City. (Demers Dep. at 100, 103, 110; Cordeiro Dep. at 84-85).[3]

---

[1] Bird complied with the officers' orders while being placed into protective custody at the Wonder Bowl. (*See* Ryan Dep. at 110).

[2] Bird has identified a number of ways in which, he says, the officers violated the Massachusetts protective custody statute and police department policy, including that he was never informed of his right to make a phone call, that he was never informed in writing of his right to take a breathalyzer test after being placed in protective custody, that a protective custody "blue card" was not completed, and that an alcohol-treatment center was never called. (Compl. ¶¶ 43-50) (citing Mass. Gen. Laws ch. 111B, § 8; General Order 14-03).

[3] Bird alleges that Demers's use of his personal cell phone to make the recording and the City's failure to preserve the original video violated department policy in multiple ways. (Compl. ¶¶ 51-58) (citing General Order 2-11).

2

According to Bird, after his handcuffs were removed, he was asked to get up. (Bird Dep. at 45). He testified that he got up, sidestepping Officer Demers to go in the direction the officer wanted him to go. Officer Demers then grabbed his right arm. (*Id.* at 45-46). He testified that he threw his right arm up in response, and that Officer Demers then threw him up against the wall. (*Id.* at 46-47). According to Bird, Officer O'Shea came over and held his arms while Officer Demers began striking him in the face, causing him to fall to the ground and sustain injuries to his face and head, including a broken nose. (Compl. ¶ 29; Bird Dep. at 47-49). Officer Demers then ordered Officer Ryan, who had come over to assist, to tase Bird. Officer Ryan did so, which allegedly "disrupted . . . Bird's central nervous system and incapacitated him." (Compl. ¶¶ 31-32; *see* Bird Dep. at 49-51). After the attack, Bird alleges that he was left handcuffed and bleeding in the booking room. (Compl. ¶ 37).[4]

According to defendants, as Bird was being uncuffed to have his booking photograph taken, he suddenly rose from the bench and attacked Officer Demers. (Defs. Mem. in Supp. at 3, citing Defs. Ex. C (Video)). They allege that Bird was then restrained by Officers Demers and O'Shea. (*Id.*). According to defendants, "due to [Bird's] continued violent resistance, [Officer] Ryan assisted." (*Id.*). "During the course of [Bird's] resistance," they allege, "[he] was tased by Defendant Ryan." (*Id.*).

After the alleged assault, Bird was arrested and taken to the Ash Street Jail. He was charged with assault and battery on a police officer (Officer Demers) and disorderly conduct. (Defs. Ex. D (Arrest Report)). A jury ultimately found him not guilty of all charges. (Compl. ¶ 5).

---

[4] According to Bird, police department policy requires officers to take a photo of the areas impacted by an officer's taser, but none was taken. (Compl. ¶ 35). He further alleges that Officer Ryan violated department policy by failing to warn him that he could potentially be tased and by carrying and using a taser without being certified to do so at the time of the incident. (*Id.* ¶ 33; Pl. Mem. in Opp. at 3 n.2).

Joseph Cordeiro is the Chief of Police of New Bedford. Cordeiro was not present at the Wonder Bowl or at the booking area where the altercation took place.

B. **Procedural Background**

On November 3, 2017, Bird filed a complaint against the City of New Bedford, the New Bedford Police Department, and officers Greg Demers, David Michalski, James Ryan, Terence O'Shea, and Police Chief Joseph Cordeiro, both individually and in their official capacities. The complaint alleged seven claims: (1) a claim under 42 U.S.C. § 1983 for excessive force and unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments; (2) a claim for excessive force and unreasonable search and seizure in violation of Article 14 of the Massachusetts Declaration of Rights; (3) a claim under § 1983 for malicious prosecution in violation of the Fourth, Fifth, and Fourteenth Amendments; (4) assault; (5) battery; (6) false arrest; and (7) malicious prosecution.

On February 20, 2018, defendants moved for partial judgment on the pleadings, seeking to dismiss all claims against the New Bedford Police Department and the named police defendants in their official capacities. That motion was granted on March 20, 2018.

The remaining defendants have now moved for summary judgment on all claims.[5]

II. **Legal Standard**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine

---

[5] Bird has also moved to amend the complaint to add a claim against the City under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and a claim under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 § 11I. That motion is the subject of a separate memorandum and order.

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## III. Analysis

### A. Claims under 42 U.S.C. § 1983 (Counts One and Three)

Counts One and Three allege claims under 42 U.S.C. § 1983 for violations of constitutional rights arising under the Fourth, Fifth, and Fourteenth Amendments. A plaintiff in a § 1983 action must establish (1) that the defendant has deprived him or her of a right secured by the Constitution, and (2) that the defendant did so acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *see also Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 49 (1st Cir. 2000).[6] Here, the individual defendants contend they are entitled to summary judgment on the basis of qualified immunity.

---

[6] It is not disputed that the defendant officers were acting under color of state law during the events surrounding Bird's assault and arrest on November 4, 2014, and subsequent prosecution. "Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988).

5

### 1. Qualified Immunity Generally

The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is determined according to a two-part test. *See Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009); *Maldonado v. Fontanes*, 568 F.3d 263, 268-9 (1st Cir. 2009). The relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Maldonado*, 568 F.3d at 268-9.

The question is not whether some right has been clearly established at a highly abstract level—for example, the right to be free from unreasonable searches and seizures—but "whether, under the circumstances that confronted the official, 'a reasonable official would understand that what he is doing violated that right.'" *Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, the question is "whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005) (quoting *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004)). The qualified-immunity doctrine "leaves ample room for mistaken judgments." *Berthiaume*, 142 F.3d at 15 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Each of the relevant claims will be analyzed under that framework.

### 2. Excessive Force and False Arrest (Count One)

Count One asserts a claim for "violation of the right to freedom from excessive force, unreasonable search and unreasonable seizure" under the Fourth and Fourteenth Amendments.

(Compl. ¶ 70). It specifically alleges that defendants, acting under the color of state law, "violated Bird's right to be free from unreasonable search and seizure by, *inter alia*, using excessive force, and unreasonable and unjustified force" and by "arresting and imprisoning" him, "charging him with multiple offenses, and prosecuting him, all without probable cause." (*Id.*). In substance, Count One thus asserts a claim of excessive force; a claim of false arrest; and a claim of malicious prosecution, all under the Fourth and Fourteenth Amendments. Because Count Three expressly alleges a constitutional claim based on malicious prosecution, that claim will be addressed separately.

### a. Excessive Force

In order to establish a Fourth Amendment claim based on excessive use of force, the plaintiff must show (1) that there was a seizure within the meaning of the Fourth Amendment; and (2) that the use of force during the seizure was unreasonable under all circumstances. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Bastien v. Goddard*, 279 F.3d 10, 14 (1st Cir. 2002). The right to make an arrest carries with it the right to use some degree of force. *See Graham*, 490 U.S. at 396. Only excessive force is actionable; "not every push or shove rises to the level of a constitutional violation." *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 205 (1st Cir. 1990).

The critical question is whether the force used was "excessive under objective standards of reasonableness." *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The objective reasonableness of the force used is determined by means of a balancing test that considers, among other things, the severity of the suspected offense, whether the suspect poses an

7

immediate threat to the officer and others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*; *see also Bastien*, 279 F.3d at 14.

Here, there are disputed issues of material fact as to whether defendants Officers Demers, O'Shea, and Ryan used excessive force during the incident at the police station. Defendants contend that Bird initiated the altercation and that the officers used only reasonable force to restrain him. Although defendants contend that the video evidence supports their version of events, the original video was not preserved, and the available video clearly does not show the entire episode.

Bird, in turn, contends that the officers initiated the altercation, and in any event used unnecessary force, including throwing him against a wall, punching him, and tasering him. Such a use of force by the officers, if proved, could constitute an unreasonable amount of force. Indeed, Bird was acquitted of assault and battery on a police officer and disorderly conduct, suggesting that a reasonable jury could believe his version of events.

Thus, if credited, Bird's version of events would constitute a violation of the Fourth Amendment right to freedom from excessive force—a right that was clearly established at the time of the assault. The use of violence against individuals who pose no safety threat is clearly unreasonable, and that fact would have been understood by an objectively reasonable officer. *See Asociacion de Periodistas de P.R. v. Mueller*, 529 F.3d 52, 60-1 (1st Cir. 2008). Accordingly, under the circumstances of this case, a reasonable jury could find that the use of force by Officers Demers, O'Shea, and Ryan was objectively unreasonable, and therefore they are not entitled to qualified immunity as to the constitutional claim based on excessive force.

    b.  **False Arrest**

Count One also asserts a claim of false arrest under the Fourth and Fourteenth

Amendments. Essentially, Bird, who was already in protective custody for alcohol intoxication at the time, alleges that he was subsequently arrested (and ultimately charged and prosecuted) without probable cause.

"In assessing section 1983 claims for false arrest, courts look to the law of the state in which the arrest occurred." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 87 (E.D.N.Y. 2016) (citing *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015)). "Massachusetts common law requires that an officer have 'reasonable grounds' for making an arrest, "which "has been held to be "substantially overlapping" with the constitutional requirement of "probable cause." *Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989). Thus, the existence of probable cause will defeat a false-arrest claim. *See id.* ("[A]t the foundation of all the claims [including false arrest and § 1983] is the necessity that the arrest be supported by probable cause."); *Felix v. Lugas*, 2004 WL 1775996 at *2 n.6 (D. Mass. Mar. 2, 2004) ("Although lack of probable cause is not an element to a false arrest claim, its absence provides a sufficient basis to dismiss a false imprisonment or false arrest claim.") (internal citation omitted).

Here, defendants contend that they had probable cause for arresting and charging Bird with (1) assault and battery on a police officer and (2) disorderly conduct.

Under Mass. Gen. Laws ch. 265, § 13D, a person commits the offense of assault and battery on a police officer if he engages in "purposeful and unwelcomed contact with a person the defendant knows to be a law enforcement officer actually engaged in the performance of official duties." *United States v. Santos*, 363 F.3d 19, 23 (1st Cir. 2004) (quoting *United States v. Fernandez*, 121 F.3d 777, 778 (1st Cir. 1997)).

There are disputed issues of material fact as to whether the officers had probable cause to believe that Bird committed the offense of assault and battery on a police officer. "[I]n instances

involving either lawful or unlawful arrest by law enforcement officers, a defendant is not privileged to use force to resist arrest *in the absence of excessive force by the arresting officer*." *Commonwealth v. Graham*, 62 Mass. App. Ct. 642, 651-52 (2004) (emphasis added); *see also Graham v. Antonino*, 2005 WL 102960 at *1 (D. Mass. Jan. 19, 2005). Again, if Bird's testimony is credited, any force he used was in legitimate self-defense, and therefore there would have been no probable cause for the resulting criminal charge.

There are likewise disputed issues of material fact as to whether defendants had probable cause to arrest Bird for disorderly conduct. Bird was charged under the City's disorderly-conduct ordinance, (Defs. Ex. D (Arrest Report)), which provides as follows:

> No person shall behave in a rude or disorderly manner, or use indecent, profane or insulting language in any street, public place, or public building in the city, or be, or remain upon any doorstep, portico or other projection from any such building, or any church, meeting house, public hall or entrance thereto, to the annoyance or disturbance of any person.

NEW BEDFORD, MASS., CODE OF ORDINANCES § 17-1 (2019).[7] Again, if the officers employed excessive force against Bird, and Bird's actions in response were in self-defense, and thus privileged, there would have been no probable cause for arresting and charging him with

---

[7] The City's disorderly-conduct ordinance has a state-law equivalent, Mass. Gen. Laws ch. 272, § 53. *See* NEW BEDFORD, MASS., CODE OF ORDINANCES § 17-1 (2019). The Massachusetts Supreme Judicial Court has interpreted Mass. Gen. Laws ch. 272, § 53 to incorporate the Model Penal Code's definition of disorderly conduct. *See Abraham v. Nagle*, 116 F.3d 11, 13 (1st Cir. 1997) (citing *Alegata v. Commonwealth*, 353 Mass. 287, 303 (1967)). That definition states:

> A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . engages in fighting or threatening, or in violent or tumultuous behavior; or . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

Model Penal Code § 250.2. As the First Circuit has noted, "a number of Massachusetts cases have upheld disorderly conduct arrests where a refusal to obey police orders created a safety threat." *Abraham*, 116 F.3d at 14.

behaving in a "rude or disorderly manner" within the meaning of the ordinance.[8] Such an arrest would violate Bird's Fourth Amendment right to freedom from unlawful arrest—a right that was clearly established at the time of the assault. *See Abreu-Guzman v. Ford*, 241 F.3d 69, 73 (1st Cir. 2001) ("It has been clearly established for a very long time that the Fourth Amendment requires that arrests be based on probable cause.") (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *Martinez-Rodriguez v. Guevara*, 597 F.3d 414, 420 (1st Cir. 2010) ("It is clearly established law that the Fourth Amendment requires that arrests be based upon probable cause.") (citing *Beck*, 379 U.S. at 91). In addition, if, as Bird alleges, his arrest and the resulting criminal charges were brought by defendants to cover up the unlawful assault, as an objective matter the arrest could not have been based upon probable cause. *See Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009).

Accordingly, and under the circumstances of this case, there are disputed issues of material fact as to whether Officers Demers, O'Shea, and Ryan had an objectively reasonable basis for believing that probable cause existed, and therefore they are not entitled to qualified immunity as to the constitutional claim based on false arrest.

### 3. Malicious Prosecution (Count Three)

Count Three alleges a claim for malicious prosecution under § 1983. Specifically, it alleges that defendants "maliciously caused criminal charges to be brought and prosecuted against Plaintiff Bird, without probable cause and with malice, causing [him] to suffer harm . . . and thereby depriv[ing] [him] of rights secured under the Fourth, Fifth and Fourteenth

---

[8] It is not clear whether the disorderly-conduct charge stemmed from Bird's conduct at the Wonder Bowl or the incident that occurred in the booking room. The Court will assume that it was the latter, and therefore confines its analysis to Bird's conduct during the booking incident. *See* Mass Gen. Laws ch. 111B, § 8 ("A person assisted to a facility or held in protective custody by the police pursuant to the provisions of this section, shall not be considered to have been arrested or to have been charged with any crime. . . .").

Amendments . . . ." (Compl. ¶ 72).

To prevail on a common-law claim for malicious prosecution, a plaintiff must prove that defendants instituted criminal proceedings against him, with malice and without probable cause, and that the proceedings terminated in his favor. *See Foley v. Polaroid Corp.*, 400 Mass. 82, 100 (1987); *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001); *Santiago*, 891 F.2d at 387. A plaintiff "also must show a deprivation of a federally-protected right" to "transform malicious prosecution into a claim cognizable under section 1983." *Nieves*, 241 F.3d at 53.

Proof of malicious prosecution ordinarily begins with proof of the submission, under oath, of a criminal complaint. However, "a person need not swear out a criminal complaint in order to be held answerable for malicious prosecution." *Correllas v. Viveiros*, 410 Mass. 314, 318 (1991). Someone who, in bad faith, provides information to a police officer that results in that officer submitting a complaint against another may also be liable. *See Limone v. United States*, 497 F. Supp. 2d 143, 206 (D. Mass. 2007).

The plaintiff has the burden to prove lack of probable cause; it cannot be inferred merely from the fact of acquittal. *See Muniz v. Mehlman*, 327 Mass. 353, 359 (1951). The plaintiff must prove malice by showing that defendant knew there was no probable cause for the prosecution, and that he acted with an improper motive. *See Foley*, 400 Mass. at 100. "Sometimes the lack of probable cause is so obvious that an inference of malice is warranted." *Id.* at 101.[9]

Here, defendants do not dispute that they prosecuted Bird, or that he was acquitted. However, as noted, there are disputed issues of material fact as to whether that prosecution was

---

[9] Where a person is prosecuted for multiple offenses, a claim of malicious prosecution can succeed for one or more of the offenses, even if it fails as to the other offenses. *See Muniz*, 327 Mass. at 360. A jury could therefore find for Bird on the malicious-prosecution claim if either of the two charges brought against him was pursued without probable cause and with malice.

12

supported by probable cause. Furthermore, Bird has put forth sufficient evidence of malice on the part of Officers Demers, O'Shea, and Ryan. If his version of events is credited, a jury could reasonably conclude the officers prosecuted him to cover up their use of excessive force in the booking room.[10]

Accordingly, a reasonable jury could find that prosecution of Bird by Officers Demers, O'Shea, and Ryan was undertaken with malice and without probable cause, and therefore they are not entitled to qualified immunity as to the constitutional claim based on malicious prosecution.

### 4. City of New Bedford

Counts One and Three also assert claims against the City of New Bedford. Plaintiff has separately moved to amend the complaint to add a specific claim against the City under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), which is the only potentially viable theory of municipal liability. Accordingly, the Court will grant the motion for summary judgment as to the claims against the City to the extent those claims are not based on a *Monell* theory, and otherwise deny it without prejudice.

### 5. Officer Michalski

There is no evidence in the record that Officer Michalski violated Bird's constitutional rights, or even that he acted in bad faith. It is undisputed that he was not at the police station at the time the assault occurred. To the extent that he was involved with the subsequent decision to arrest and charge Bird with crimes, his belief that Bird committed those crimes appears to have

---

[10] The Fourth Amendment right to freedom from malicious prosecution was clearly established at the time of Bird's assault in 2014. *See Echavarria v. Roach*, 2017 WL 3928270, at *8 (D. Mass. Sept. 7, 2017) (chronicling "the long history of cases" in the First Circuit "addressing whether the Constitution affords a right to be free from malicious prosecution" but ultimately concluding that the right was clearly established as of 2013).

13

stemmed entirely from the reports of Officers Demers, O'Shea, and Ryan.[11] Simply believing the word of fellow officers over a civilian, without more, is at most a mistaken judgment, not a constitutional violation. *Nault v. Bazarewsky*, 2018 WL 1053315, at *7 (D. Mass. Feb. 26, 2018). Accordingly, the motion for summary judgment will be granted as to Officer Michalski on Counts One and Three.

### 6. Police Chief Cordeiro

It is undisputed that Police Chief Joseph Cordeiro was not involved in the application of force against Bird. Bird, however, contends that Chief Cordeiro may nevertheless be found liable because he was the Chief of Police during his prosecution, and thus "allowed the prosecution of an innocent man go forward [sic] even though he was aware or should have been aware that [defendant officers] under his command had committed crimes against [Bird] and had failed to follow policy in several important areas that would have prevented the unfortunate events of November 6, 2014." (Pl. Mem. in Opp. at 12).

The doctrine of *respondeat superior* cannot serve as the basis for liability in an action under § 1983. *See Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996). For supervisory liability to attach, a plaintiff must show an affirmative link between the constitutional violation and the supervisor's actions and omissions, "whether through direct participation or through conduct that amounts to condonation or tacit authorization." *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999).

> Under 42 U.S.C. § 1983, a supervisory official may be held liable for the behavior of his subordinates only if (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence

---

[11] There is no evidence, for example, that Officer Michalski knew that Officers Demers, O'Shea, and Ryan fabricated their claims of assault and battery on a police officer and disorderly conduct.

amounting to deliberate indifference.

*Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (internal citations and quotations omitted).

"The requirement of an 'affirmative link' between the behavior of a subordinate and the action or inaction of his supervisor 'contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.'" *Id.* (quoting *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir. 1995)). The supervisor's behavior must amount to "supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Id.* A finding of deliberate indifference requires a showing that "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Id.* (quoting *Hegarty*, 53 F.3d at 1380). Such indifference by a supervisor can be shown if the supervisor had actual knowledge of or was willfully blind to the alleged constitutional violations. *See Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 535 (1st Cir. 2011); *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6-7 (1st Cir. 1998). Isolated instances of unconstitutional activity are ordinarily insufficient to show deliberate indifference. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994).

Here, there is no evidence that Chief Cordeiro acted with "deliberate indifference" in supervising the officers who allegedly used excessive force on Bird, unlawfully arrested him, or maliciously prosecuted him. Bird's claim is essentially that Cordeiro was the chief of police at the time of his prosecution and did nothing to stop it. There is no evidence, for example, that he was on notice of the possible propensity of the officers to use excessive force during bookings, or to create probable cause where none existed, or that his management created an atmosphere in which officers believed they would not be punished for such behavior. *Compare Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996) (reasonable jury could have inferred that police

department knew of officer's alleged "propensity for violence" based on five excessive force complaints received in five years); *see also Fiacco v. City of Rensselaer*, 783 F.2d 330, 331 (2d Cir. 1986) (officers could have viewed city's failure to implement investigative procedures as reflecting indifference to use of force); *Clark v. Pena*, 2000 WL 35427177, at *9 (W.D. Mich. April 28, 2000) (police department's ineffective citizen-complaint procedures could have led officers to use excessive force); *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1233 (D. Me. 1996) (police chief's management style created an atmosphere in which officers believed that he would not punish their use of excessive force).

Accordingly, no reasonable jury could conclude that Chief Cordeiro acted with deliberate indifference in supervising those under his command. The Court will therefore grant summary judgment to Chief Cordeiro on Counts One and Three.

B. **Claims for Violation of Article 14**

Count Two purports to assert a claim for violation of Article 14 of the Massachusetts Declaration of Rights, which, among other things, provides "a right to be secure from all unreasonable . . . seizures." Mass. Const., Pt. 1, Art. XIV. "The SJC has never held that there is a right of action to enforce the Declaration of Rights. It did suggest, 35 years ago, in dicta, that such a right 'may' be available." *Pimentel v. City of Methuen*, 323 F. Supp. 3d 255, 273 (D. Mass. 2018) (citing *Layne v. Superintendent, Mass. Corr. Inst., Cedar Junction*, 406 Mass. 156, 159-60 (1989); *Phillips v. Youth Dev. Program, Inc.*, 390 Mass. 652, 657-58 (1983)). However, no Massachusetts appellate court, in the time since, has ever held that such a right exists under Article 14.[12] *Id.* Because "[i]t is up to the courts of Massachusetts, not this Court, to make that

---

[12] One court in this district has recently concluded that a direct constitutional claim for declaratory or injunctive relief may be available under Article 12 of the Declaration of Rights, relying on a decision by the Massachusetts Appeals Court. *See Markham v. Town of Chelmsford*, 2019 WL 4016433, at *4 (D. Mass Aug. 26,

choice," *id.*, the motion for summary judgment as to Count Two will therefore be granted.  To the extent that Bird seeks to assert a claim under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I, that claim is the subject of his motion to amend, which will be addressed in a separate memorandum and order.

### C. Common-Law Claims (Counts Four, Five, Six, and Seven)

Counts Four, Five, Six, and Seven assert claims against various individual officers for assault, battery, false arrest, and malicious prosecution.[13]

#### 1. Claims Against Officer Michalski and Chief Cordeiro

For the reasons set forth above, there is no evidence to support a claim against Officer Michalski or Chief Cordeiro as to any of the four alleged intentional torts.  Summary judgment will therefore be granted as to those claims.

#### 2. Claims Against Officers Demers, O'Shea, and Ryan

##### a. Assault (Count Four) and Battery (Count Five)

To establish a claim of civil assault under Massachusetts law, a plaintiff must prove "that a defendant 'act[ed] intending to cause a harmful or offensive contact' with a plaintiff, 'or [acted to create] an imminent apprehension of such a contact,' and that a plaintiff was 'thereby put in such imminent apprehension.'" *Diaz v. Devlin*, 229 F. Supp. 3d 101, 111-2 (D. Mass. 2017) (quoting RESTATEMENT (SECOND) OF TORTS § 21(1) (1965)) (citing *Conley v. Romeri*, 60 Mass. App. Ct. 799, 805 n.6 (2004)).  "The tort of battery represents a completed assault in that the intention of a defendant to cause a harmful or offensive contact resulted, directly or otherwise, in

---

2019) (citing *Doe v. Sex Offender Registry Bd.*, 94 Mass. App. Ct. 52, 64 (2018)).  However, both of those decisions held a right of action exists under Article 12 of the Declaration, not Article 14.

[13] The City of New Bedford has statutory immunity from suit as to "any claim arising out of an intentional tort," including specifically any claim for assault, battery, false arrest, or malicious prosecution.  Mass. Gen. Laws ch. 258, § 10(c).  The complaint does not assert claims of intentional tort against the City.

17

such a harmful or offensive contact." *Id.* (citing *Waters v. Blackshear*, 412 Mass. 589, 590 (1992)).

A police officer is entitled to use reasonable force in conducting a lawful arrest, but may be liable for battery if he uses excessive force. *See Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010). The standard for determining whether force is reasonable for the purposes of assault and battery claims is "essentially the same" as the standard under the Fourth Amendment. *Dean v. City of Worcester*, 924 F.2d 364, 369 (1st Cir. 1991). That is, the relevant inquiry is whether the officer's actions were objectively reasonable in light of the facts and circumstances existing at the time. *Id.* at 367.

In light of the disputed issues of material fact that preclude summary judgment on Bird's claim for excessive force, the motion for summary judgment as to the common-law claims for assault and battery (Counts Four and Five) will be denied as to Officers Demers, O'Shea, and Ryan.

### b. False Arrest (Count Six)

The elements of a false-arrest claim are "(1) the defendant[s] intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant[s] had no privilege to cause the confinement." *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 n.6 (1st Cir. 1995).

Again, in light of the disputed issues of material fact that preclude summary judgment on the §1983 claim for unreasonable search and seizure on a theory of false arrest, the motion for summary judgment as to the common-law claim for false arrest (Count Six) will be denied as to Officers Demers, O'Shea, and Ryan.

### c. Malicious Prosecution (Count Seven)

To prevail on a claim for malicious prosecution, Bird must show that defendants instituted criminal proceedings against him, with malice and without probable cause, and that the proceedings terminated in his favor. *See Foley*, 400 Mass. at 100; *Nieves*, 241 F.3d at 53; *Santiago*, 891 F.2d at 387.

Again, in light of the disputed issues of material fact that preclude summary judgment on the § 1983 claim for malicious prosecution (Count Three), the motion for summary judgment as to the common-law claim for malicious prosecution (Count Seven) will also be denied as to Officers Demers, O'Shea, and Ryan.

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is

1. GRANTED as to the claim under the Massachusetts Declaration of Rights (Count Two);
2. GRANTED as to all claims against defendant David Michalski;
3. GRANTED as to all claims against defendant Police Chief Joseph Cordeiro; and
4. GRANTED as to the claims under 42 U.S.C. § 1983 against the City of New Bedford, to the extent that liability is predicated on any theory other than municipal liability under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and otherwise DENIED without prejudice.

Defendants' motion for summary judgment is otherwise DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: September 13, 2019          United States District Judge